UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIM CARSON and JIM CARSON, | No.  2:12-cv-01487-MCE-CMK |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| BANK OF AMERICA, N.A., et al., | |
| Defendants. | |

Through this action, Plaintiffs Kim Carson and Jim Carson ("Plaintiffs") seek redress from Defendant Bank of America, N.A. ("Defendant") and Does 1-100 based on alleged violations of California Civil Code section 2924, and California Business & Professions Code section 17200.  Plaintiffs also seek redress based on breach of contract, breach of the covenant of good faith and fair dealing, reformation of contract, promissory estoppel, invasion of privacy and fraud.  Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Defendant's Motion was filed on July 26, 2012.

///

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1

Plaintiffs filed a timely opposition to Defendant's Motion on August 23, 2012.  For the reasons set forth below, Defendant's Motion to Dismiss is granted.

## BACKGROUND[2]

Plaintiffs state that they owned two properties located in Susanville, California, each subject to mortgage loans: the "Connecticut Property" and the "Willow Property."

<u>The Connecticut Property</u>

In 2006, Plaintiffs refinanced their mortgage with Countrywide Lending, and that loan was later acquired by Defendant.

In June 2009, Plaintiffs contacted Defendant about obtaining a loan modification. Plaintiffs contend that "during initial discussions," Defendant's unidentified representative told Plaintiffs they would have to stop making their monthly loan payments before they could qualify for a loan modification.  Thereafter, Plaintiffs submitted a loan modification application to Defendant.  In August 2009, Plaintiffs were placed into a trial payment plan for approximately six months.  Pursuant to the trial payment plan, Plaintiffs were required to make reduced payments of approximately $685 per month.  Plaintiffs made every trial plan payment in full and on time.

In January 2010, Plaintiffs contacted Defendant to obtain a permanent modification.  Plaintiffs allege that from this point onward, when they would call about the status of their loan modification application, Defendant subjected them to long hold times and transfers, and when they did speak to (unnamed) representatives of Defendant, they did not receive definitive answers.  In addition, Plaintiffs contend that Defendant lost their documents, so they had to resubmit their loan application multiple times.  Plaintiffs also claim that Defendant denied Plaintiffs' applications on the grounds that the applications were incomplete but failed to timely notify Plaintiffs of the denials.

---

[2] The factual assertions in this section are based on the allegations in Plaintiffs' First Amended Complaint unless otherwise specified.  (<u>See</u> Pls.' 1st Am. Compl., July 2, 2012, ECF No. 15.)

Indeed, Plaintiffs contend they were only notified of the denials when they called to ask about the status of their applications. During this time, Plaintiffs apparently did not pay their loans, and thus accrued a large amount of arrears and late fees.

On August 2, 2010, while Plaintiffs had a loan modification application pending and believed they were in a trial payment plan, Defendant sent Plaintiffs a Notice of Intent to Accelerate, demanding payment of $13,518—the full amount of arrears on the mortgage. On December 20, 2010, when Plaintiffs again believed they were in compliance with the trial payment plan, Defendant sent Plaintiffs a reinstatement calculation, with a reinstatement amount of $22,234.67. To reinstate their loan, Plaintiffs withdrew the entire amount from their emergency funds and reinstated the loan. Plaintiffs continued to contact Defendant over the next few months and were repeatedly encouraged to reapply for a loan modification. However, Defendant later told Plaintiffs that Defendant could not modify Plaintiffs' mortgage on the Connecticut Property because that property was an investment property, and thus not eligible to receive loan modifications.

In July 2011, believing that applying for a loan modification was futile, Plaintiffs instead applied for a repayment plan to reinstate their mortgage and avoid foreclosure. Plaintiffs allege that in October 2011, their application for a repayment plan was approved, yet Defendant never sent Plaintiffs the appropriate papers to sign. Instead, Defendant sent Plaintiffs a Notice of Default. When Plaintiffs contacted Defendant about the Notice of Default, an individual named "LaPorsche" told Plaintiffs that there was no record that Plaintiffs had been approved for a repayment plan. Plaintiffs then followed LaPorsche's advice to apply for a loan modification. Plaintiffs allege that between October 2011 and November 2011, they sent their application materials to Defendant multiple times, yet Defendant claimed to have never received the materials.

At an unspecified time after that, Plaintiffs contacted Defendant, and were told by an individual named "Corrina Ramirez" that their loan modification application was complete and the loan modification was in underwriting.

3

However, Plaintiffs subsequently received a Notice of Trustee Sale from Defendant, with a sale date of December 29, 2011, at 2:00 PM.  Thereafter, Plaintiffs contend that they repeatedly called Defendant to inquire about their loan modification, ask for clarification regarding the trustee sale and determine the reinstatement amount.  Although the reinstatement amount was unknown to them, Plaintiffs contend that they were ready, willing and able to tender the reinstatement amount.  Plaintiffs allege that "at some point" they spoke to Ms. Ramirez and she "advised Plaintiffs not to worry because she would be sure that Defendant . . . would postpone the pending sale."

On December 22, 2011, Plaintiffs had not received a reinstatement amount from Defendant.  Plaintiffs then "ordered a reinstatement calculation" from Defendant, which Defendant failed to provide.  (ECF No. 15 at 6.)  On December 29, 2011, Plaintiffs calculated a reinstatement figure of $24,500.00 on their own.  Plaintiffs wired this amount to Defendant, sending $22,000.00 at 9:00 AM, and $2,500.00 at 11:00 AM.  Plaintiffs then contacted Ms. Ramirez, who assured Plaintiffs that she would notify Defendant's attorneys of the wire transfer and that the Connecticut Property would not go to sale.  However, at 2:00 PM on December 29, 2011, the Connecticut Property was sold.

The Willow Property

In 2006, Plaintiffs refinanced their mortgage on the Willow Property with Countrywide Lending, and that loan was later acquired by Defendant.

In 2008, Plaintiffs contacted Defendant, seeking a loan modification.  Plaintiffs again allege that from this point onward, when they would call about the status of their loan modification application, Defendant subjected them to long hold times and transfers, and when they did speak to (unnamed) representatives of Defendant, they did not receive definitive answers.  In addition, Plaintiffs contend that Defendant lost their documents, so they had to resubmit their loan application multiple times.

///

///

1  Plaintiffs also claim that Defendant denied Plaintiffs' applications on the grounds that the
2  applications were incomplete, but failed to timely notify Plaintiffs of the denials.  During
3  this time, Plaintiffs accrued a large amount of arrears and late fees.
4      Plaintiffs allege that "sometime in the latter part of 2008," Plaintiffs were placed
5  into the Home Saver Forbearance Program, a reduced mortgage payment plan.  (ECF
6  No. 15 at 8.)  Pursuant to that plan, Plaintiffs made reduced mortgage payments for six
7  months.  Plaintiffs made every payment pursuant to the plan in full and on time.
8  However, Plaintiffs allege that Defendant never advised them about how to proceed.
9  Plaintiffs thus began applying for a loan modification (it is unclear when) and were again
10 frustrated by the process.
11     On October 25, 2010, Plaintiffs received a letter from Defendant, listing the
12 documents that Plaintiffs needed to provide to support their loan modification application.
13 Plaintiffs contend that on that same day, they submitted each listed document to
14 Defendant.  Subsequently, Defendant sent Plaintiffs a list of additional information
15 needed to complete their application.  On December 7, 2010, Plaintiffs spoke with
16 Defendant's representative, an individual named "Stacy White," who informed Plaintiffs
17 that they had been approved for the loan modification but that Defendant was requesting
18 additional documents.  Plaintiffs contend that they faxed the requested documents to
19 Defendant on that same date.
20     Plaintiffs allege that "a couple of weeks later," Defendant sold the Willow Property.
21 Plaintiffs allege that at this point, they believed that they had received a loan modification
22 and were unaware that their house would be sold.  Plaintiffs contend that they had
23 substantial emergency funds, and were ready, willing, and able to pay the (unspecified)
24 reinstatement amount.
25 ///
26 ///
27 ///
28 ///

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id. However, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.

///

1  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to
2  plausible, their complaint must be dismissed." Id.  However, "a well-pleaded complaint
3  may proceed even if it strikes a savvy judge that actual proof of those facts is
4  improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting
5  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).
6      A court granting a motion to dismiss a complaint must then decide whether to
7  grant leave to amend.  Leave to amend should be "freely given" where there is no
8  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice
9  to the opposing party by virtue of allowance of the amendment, [or] futility of the
10  amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.
11  Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to
12  be considered when deciding whether to grant leave to amend).  Not all of these factors
13  merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .
14  carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,
15  185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that
16  "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,
17  Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,
18  1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.
19  1989) ("Leave need not be granted where the amendment of the complaint . . .
20  constitutes an exercise in futility . . . .")).
21
22  **ANALYSIS**
23
24  **A.    Rule 8(a) Requirements**
25
26  As stated above, while lenient, Rule 8(a) still requires that a plaintiff's factual
27  allegations must be enough to raise a right to relief above the speculative level.
28  Twombly, 550 U.S. at 555.

1    Further, when fraud is alleged, as here, a plaintiff must conform to the heightened
2    pleading standards of Rule 9(b). See, e.g., Kearns v. Ford Motor Co., 567 F.3d 1120,
3    1124 (9th Cir. 2009) (the heightened pleading requirements of Rule 9(b) require a
4    plaintiff to plead facts as to the "who, what, when, where, and how" of the alleged fraud).
5        Plaintiffs' pleadings regarding the Willow Property fail to adhere to either the
6    heightened pleading standards of Rule 9(b) or the more lenient standard of Rule 8(a).
7    The allegations total six paragraphs, which contain vague assertions that Defendant
8    delayed and hindered Plaintiffs in their loan modification application process, and that
9    the Willow Property was sold "a couple of weeks" after December 7, 2010.  Plaintiffs'
10   allegations regarding the Willow Property are little more than "an unadorned, the-
11   defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly,
12   550 U.S. at 555).  Such minimal allegations are simply insufficient to support any of
13   Plaintiffs' causes of action pertaining to the Willow Property.
14       Accordingly, Defendant's motion to dismiss Plaintiffs' claims relating to the Willow
15   Property is granted.
16
17       **B.    Violation of California Civil Code Section 2924**
18
19       Plaintiffs' first cause of action alleges that Defendant violated California Civil Code
20   section 2924 by providing Plaintiffs with defective notices of default and by failing to
21   allow Plaintiffs to reinstate their loan.  Sections 2924-2924i of the California Civil Code
22   govern non-judicial foreclosures.  Under California law, a defaulted borrower is "required
23   to allege tender of the amount of [the lender's] secured indebtedness in order to
24   maintain any cause of action for irregularity in the sale procedure."
25   ///
26   ///
27   ///
28   ///

1 Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996); see also
2 Magdaleno v. Indymac Bancorp, Inc., 853 F. Supp. 2d 983, 991 (E.D. Cal. 2001) (citing
3 Alicea v. GE Money Bank, No. C 09-00091 SBA, 2009 WL 2136969, *3 (N.D. Cal. July
4 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is
5 either pending or has taken place, the debtor must allege a credible tender of the
6 amount of the secured debt to maintain any cause of action for wrongful foreclosure.")).
7 The application of the "tender rule" prevents "a court from uselessly setting aside a
8 foreclosure sale on a technical ground when the party making the challenge has not
9 established his ability to purchase the property." Magdaleno, 853 F. Supp. 2d at 991
10 (quoting Williams v. Countrywide Home Loans, No. C 00-0242 SC, 1999 WL 740375, *2
11 (N.D. Cal. Sept. 15, 1999)).  In sum, an action to set aside a foreclosure sale,
12 unaccompanied by an offer to tender, does not state a cause of action which a court of
13 equity recognizes. Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 117 (1981).
14        In this case, Plaintiffs allege that they "had substantial emergency funds, and at
15 all times were ready, willing, and able to reinstate their mortgage if they had been given
16 a reinstatement figure." (ECF No. 15 at 7.)  However, Plaintiffs were in default of their
17 home mortgage loan, and foreclosure has taken place.  Accordingly, Plaintiffs are
18 "required to allege tender of the amount of "[the lender's] secured indebtedness."
19 Abdallah, 43 Cal. App. 4th at 1109.  Plaintiffs do not allege that they have tendered, or
20 are ready, willing, and able to tender, this amount.
21        Defendant's motion to dismiss Plaintiff's claim for violations of California Civil
22 Code section 2924 is therefore granted.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**C.    Breach of Contract**

Plaintiffs' second cause of action alleges that Defendant breached the loan agreement by failing to comply with California Civil Code section 2924, and by failing to allow Plaintiffs to tender the reinstatement amount, as required by Section 19 of the Deed of Trust.  Plaintiffs' essentially claim that Defendant breached its contract with Plaintiffs by foreclosing on Plaintiffs' property.  Plaintiffs' claim for breach of contract is therefore "a cause of action implicitly integrated to the sale" to which California's tender rule applies.  Montoya v. Countrywide Bank, C09-00641 JW, 2009 WL 1813973, *11 (N.D. Cal. June 25, 2009).  As set forth above, Plaintiffs must "allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure."  Abdallah, 43 Cal. App. 4th at 1109.  Because Plaintiffs have failed to allege they have tendered the required amount, their claim for breach of contract cannot succeed under the tender rule.

Accordingly, Defendant's motion to dismiss Plaintiffs' promissory estoppel claim is granted.

**D.    Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiffs' third cause of action alleges that Defendant breached the covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation.  Foley v. Interactive Data Corp., 7 Cal. 3d 654, 683-84 (1988).  The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.  Id. at 690.

///

///

///

"In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which frustrates the other party's rights to the benefits of the contract." Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1153 (1998).

Under California law, recovery for breach of the covenant "is available only in limited circumstances, generally involving a special relationship between the contracting parties." Bionghi v. Metro. Water Dist., 70 Cal. App. 4th 1358, 1370 (1999).  California courts have rejected the argument that the doctrine, which traditionally extends only to unique fiduciary like relationships, should encompass normal commercial banking transactions.  Mitsui Mfrs. Bank v. Sup. Ct., 212 Cal. App. 3d 726, 729 (1989).

Plaintiffs allege that Defendant breached the covenant of good faith and fair dealing by, among other things, not allowing Plaintiffs to reinstate their loans, delaying Plaintiffs' loan application process, and by informing Plaintiffs that they could qualify for a loan modification when, in fact, they could not.  (ECF No. 15 at 12-13.)  Plaintiffs further argue that Defendant prevented them from performing under the contract by refusing to provide them with the amount required to reinstate their loans.

Regardless whether these allegations are valid, redress is not available under the good faith doctrine.  Plaintiffs do not allege a "unique fiduciary relationship" between the parties such that application of the doctrine is warranted, and it appears there is not such a relationship.  Instead, Defendant's alleged breach arises out of a normal commercial transaction, a mortgage loan, and the California courts have declined to extend the doctrine to such transactions.

Defendant's motion to dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing is therefore granted.

///
///
///
///

### E. Reformation of Contract

Plaintiffs' fourth cause of action is for reformation of contract. Under California law, a contract may be reformed when, "through fraud or mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention . . . ." Cal. Civ. Code § 3399; see also Totten v. Underwriters at Lloyd's London, 176 Cal. App. 2d 440, 448 (1959) (stating elements of reformation of contract claim).

Here, Plaintiffs allege only that a provision of the contract is unconscionable; they allege no facts showing mistake or fraud on the part of either party. (ECF No. 15 at 15). Thus, the contract is ineligible for reformation. See Cal. Civ. Code § 3399. While Plaintiffs argue in their reply that "if the Court finds a clause of a contract to be unconscionable, the Court may refuse to enforce that term of the contract," that argument does not further Plaintiffs' claim for reformation of contract. Additionally, while Plaintiffs contend that Defendant represented that it was "waiving late fees, attorneys' fees, and arrears," Plaintiffs' factual allegations show no such waiver or specific representation by Defendant.

Accordingly, Defendant's motion to dismiss Plaintiffs' claim for reformation of contract is granted.

### F. Promissory Estoppel

Plaintiffs' fifth cause of action is for promissory estoppel. Under California law, a plaintiff bringing an action for promissory estoppel must demonstrate: 1) the existence of a promise "clear and unambiguous in its terms;" 2) "reliance by the party to whom the promise is made;" 3) that any reliance was both "reasonable and foreseeable;" and 4) that the party asserting the estoppel was injured by his reliance.

US Ecology, Inc. v. State, 129 Cal. App. 4th 887, 901 (2005) (citing Laks v. Coast Fed. Sav. & Loan Ass'n., 60 Cal. App. 3d 885, 890 (1976)).  "The doctrine of promissory estoppel is used to provide a substitute for the consideration which ordinarily is required to create an enforceable promise."  Raedeke v. Gibraltar Sav. & Loan Ass'n, 10 Cal. 3d 665, 672-73 (1974).

Plaintiffs allege that Defendant "made clear promises" that it would not foreclose on Plaintiffs' property while Plaintiffs' loan application was pending "throughout the loan application procedure."  (ECF No. 15 at 16.)  Plaintiffs contend that they reasonably relied upon Defendant's representation, and thus did not pay to reinstate their loan although their emergency fund allegedly contained enough money to pay the reinstatement amount.

Plaintiffs' claim for promissory estoppel is "a cause of action implicitly integrated to the sale" to which California's tender rule applies.  Montoya v. Countrywide Bank, No. C09-00641 JW, 2009 WL 1813973, *11 (N.D. Cal. June 25, 2009).  The gravamen of Plaintiffs' claim is that Defendant promised that it would not foreclose on Plaintiffs' property, and then did so.  Accordingly, Plaintiffs are required to "allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure."  Abdallah, 43 Cal. App. 4th at 1109.  Because Plaintiffs have failed to allege they have tendered this amount.

Accordingly, Defendant's motion to dismiss Plaintiffs' promissory estoppel claim is granted.

**G.     Fraud**

Plaintiffs' sixth cause of action is for fraud.  Plaintiffs claim that Defendant made material misrepresentations and omissions, which Defendant knew were false, with the intent to cause Plaintiffs to default so that Defendant could foreclose on Plaintiffs' properties.

13

1  In California, the required elements of fraud are "a) misrepresentation; b) knowledge of
2  falsity; c) intent to defraud, i.e., to induce reliance; d) justifiable reliance; and e) resulting
3  damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (internal citation
4  omitted).  A claim for fraud must also meet the heightened pleading standard of Rule
5  9(b), which requires that the allegations be "specific enough to give defendants notice of
6  the particular misconduct which is alleged to constitute the fraud charged so that they
7  can defend against the charge and not just deny that they have done anything wrong."
8  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985); see also Kearns, 567 F.3d at
9  1124 (the heightened pleading standards of Rule 9(b) require a plaintiff to plead facts as
10 to the "who, what, when, where, and how" of the alleged fraud).  Statements of the time,
11 place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the
12 plaintiff sets forth "what is false or misleading about a statement and why it is false."
13 In re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

14  Here, that standard has not been met, particularly with regard to Plaintiffs' June
15 2009 conversation with Defendant.  (See ECF No. 15 at 3.)  Plaintiffs fail to allege the
16 "who, what, when, where, and how" of this critical conversation, among others.  Kearns,
17 567 F.3d at 1124.  Plaintiffs' First Amended Complaint also fails to specifically allege
18 what was false or misleading about any of Defendant's statements, and why those
19 statements were false, therefore falling short of the 9(b) pleading standard.

20  Moreover, Plaintiffs fail to allege any facts demonstrating the reasonableness of
21 their reliance on Defendant's alleged oral representations that Plaintiffs should stop
22 paying their loans, would suffer no negative consequences for ceasing to pay their
23 loans, and that their applications would be approved.  See Young, 160 Cal. App. 4th at
24 79.  Thus, even if Plaintiffs were to meet the heightened pleading requirements of Rule
25 9(b), they nonetheless fail to plead facts sufficient to establish a cause of action for
26 fraud.  See id.

27  Defendant's motion to dismiss Plaintiffs' claim for fraud is therefore granted.
28 ///

### H.    False Light Invasion of Privacy

Plaintiffs' seventh claim is for false light invasion of privacy. Plaintiffs allege, specifically, that Defendant "reported Plaintiffs late on their mortgage payments, when they were not in fact late, and initiating foreclosure proceedings against Plaintiffs' property when they were not in default on the loan," and these false reports placed Plaintiffs in a false light. (ECF No. 15 at 19.) "The elements of the tort of false light invasion of privacy are 1) the defendant caused to be generated publicity of the plaintiff that was false or misleading; 2) the publicity was offensive to a reasonable person; and 3) the defendant acted with actual malice." Flores v. Von Kleist, 739 F. Supp. 2d 1236, 1259 (E.D. Cal. 2010).

Defendant contends that Plaintiffs' false light claim is preempted by the Fair Credit Reporting Act ("FCRA"). The FCRA requires credit reporting agencies to adopt reasonable procedures related to the collection, communication, and use of consumer credit information to ensure fair and accurate credit reporting. 15 U.S.C. § 1681e; Roybal v. Equifax, 405 F. Supp. 2d 1177, 1181 (E.D. Cal. 2005). In furtherance of these goals, the FCRA places two types of duties on those furnishing information to credit reporting agencies. 15 U.S.C. § 1681s-2; Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153-54 (9th Cir. 2009). Subsection 2(a) "details the duty 'to provide accurate information . . . .'" 15 U.S.C. § 1681s-2(a). Subsection 2(b) imposes the duty that upon notice of dispute, "that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information," the furnisher of the information shall conduct an investigation and compile a report "with respect to the disputed information." Gorman, 584 F.3d at 1154 (quoting 15 U.S.C. § 1681s-2(b)).

While there is a private right of action under subsection (b), there is no such private right under subsection (a). Miller v. Bank of Am., N.A., No. 3:11-cv-02588-MMA, 2012 WL 871321, *5 (S.D. Cal. March 14, 2012).

///

Subsection 2(b) appears to provide the exclusive remedy for acts that constitute violations of the FCRA, because Congress, "in an effort to maintain a uniform set of duties across all furnishers of credit information . . . included an express preemption clause in the FCRA." Id. (citing Gorman, 584 F.3d at 113; 15 U.S.C. § 1681t(b)(1)(F)). Section 1681t(b) (1)(F) "precludes states from imposing requirements or prohibitions on furnishers' duties to report accurately and correct identified discrepancies as set forth in section 1681s-2." Id. "The district courts read the FCRA's preemption clause to preclude all state common law and statutory claims, to effect Congress' intent to limit a plaintiff's recovery against furnishers of credit information to only the remedies provided under the FCRA." Id. (citing Howard v. Blue Ridge Bank, 371 F. Supp. 2d 1139, 1144 (N.D. Cal. 2005); Guillen v. Bank of Am. Corp., No. 5:10-cv-05825-EJD, 2011 WL 4071996 *6, (N.D. Cal. Aug. 31, 2011)).

Accordingly, the FCRA preempts Plaintiffs' common law claim for false light invasion of privacy, as the claim is based on Defendant allegedly reporting false credit information to a credit reporting agency. Plaintiffs therefore fail to state a claim upon which relief may be granted, and Defendant's motion to dismiss Plaintiffs' false light invasion of privacy claim is granted.

### I.    Violation of California Business & Professions Code Section 17200

Plaintiffs' eighth cause of action asserts that Defendant violated California's Unfair Competition Law. Section 17200 et seq. of California's Business and Professions Code, more commonly known as California's Unfair Competition Law ("UCL") defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." This section establishes a private right of action to remedy such unfair competition. See Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1082 (9th Cir. 2007).

Section 17200 establishes three separate varieties of unfair competition: acts or practices which are unlawful, or unfair or fraudulent.

Cal-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). In proscribing "unlawful business practices, section 17200 'borrows' violations of other laws and treats them as unlawful practices that [section 17200] makes independently actionable." Durrell v. Sharp Healthcare, 108 Cal. App. 4th 1350, 1361 (2010). Thus, "unlawful" practices are practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulation, or court-made." Saunders v. Sup. Ct., 27 Cal.App.4th 832, 838-39 (1994) (citing People v. McKale, 25 Cal.3d 626, 632 (1979)). To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. McKale, 25 Cal.3d at 635.

A business act or practice is "unfair" when the conduct "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886-87 (1999). To sufficiently plead an action based on an "unfair" business act or practice, a plaintiff must allege facts showing the "unfair" nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have. Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980). Such a claim requires a plaintiff to tether its allegation to a constitutional or statutory provision or regulation carrying out such a statutory policy. See Ferrington v. McAfee, Inc., No. 10-cv-01455-LHK, 2010 WL 3910169, at *11-13 (N.D. Cal. Oct. 5, 2010) (citing Lozano v. AT&T Wireless Servs., 504 F.3d 718 (9th Cir. 2007) (discussing the use of the tethering test in California courts and the Ninth Circuit)). Furthermore, a plaintiff alleging unfair business practices under section 17200 "must state with reasonable particularity the facts supporting the statutory elements of the violation. Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993).

A claim for fraudulent business acts under section 17200 is distinct from a common law fraud claim. Under section 17200, a plaintiff does not need to show reliance in order to state a claim for fraudulent business acts. Klein v. Earth Elements,

59 Cal. App. 4th 965, 970 (1997). A plaintiff need only allege that the public is likely to be deceived by the alleged business acts. Id. However, all claims alleging fraudulent business practices under section 17200 are subject to the heightened pleading standard of Rule 9(b). See supra.

In this case, Plaintiffs allege that Defendant engaged in business practices that were unfair, unlawful and/or fraudulent. Specifically, Plaintiffs argue that Defendant's breach of the covenant of good faith and fair dealing, violations of California Civil Code section 2924, and acts of inducing reliance under the doctrine of promissory estoppel are all unfair competition under the UCL. However, Plaintiffs' pleadings are insufficient to establish a cause of action for any of the three varieties of unfair competition. First, Plaintiffs fail to plead facts sufficient to establish that Defendant has violated any law and thus engaged in unlawful business acts. Although Plaintiffs allege that Defendant violated California Civil Code section 2924, the covenant of good faith and fair dealing, and induced reliance under the doctrine of promissory estoppel, each of these claims fails. See supra. Accordingly, Plaintiffs' claim for unlawful business practices must also fail. Second, Plaintiffs have failed to plead facts sufficient to establish a right to relief based on "unfair" business practices. Although Plaintiffs claim that Defendant has violated several laws or statutory provisions that could carry out a public policy (ECF No. 15 at 20), Plaintiffs' claims as to those violations fail. See supra. Plaintiffs' claim for unfair business practices must also fail. Finally, Plaintiffs have not met the heightened pleading requirements of Rule 9(b), and thus fail to state a claim for fraudulent business practices. See supra.

Plaintiffs have thus failed to state a claim showing that Defendant's business practices were unlawful, unfair, or fraudulent under the UCL. Defendant's motion to dismiss Plaintiffs' UCL claim is therefore granted.

///

///

///

**CONCLUSION**

As a matter of law, and for the reasons set forth above, Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 16) is GRANTED with leave to amend.  In addition, the Court sua sponte DISMISSES, with leave to amend, Plaintiffs' claims against all Doe Defendants for failure to state a claim.  Plaintiffs have not demonstrated any bad faith or other malicious conduct, and therefore may file an amended complaint not later than twenty (20) days after the date this Memorandum and Order is filed electronically.  If no amended complaint is filed within said twenty (20) day period, Plaintiffs' claims will be dismissed without further notice and without leave to amend.

IT IS SO ORDERED.

Dated:  October 16, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE