UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

KIM CARSON and JIM CARSON,

Plaintiffs,

v.

BANK OF AMERICA, N.A., et al.,

Defendants.

No. 2:12-cv-01487-MCE-CMK

**MEMORANDUM AND ORDER**

Through this action, Plaintiffs Kim Carson and Jim Carson ("Plaintiffs") seek redress from Defendant Bank of America, N.A. ("Defendant") and Does 1-100 based on alleged violations of California Civil Code section 2924 and California Business & Professions Code section 17200. Plaintiffs also seek redress based on breach of contract, breach of the covenant of good faith and fair dealing, promissory estoppel, and fraud.[1] Presently before the Court is Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2]

[1] Though the Second Amended Complaint included an additional cause of action, Plaintiffs now "request that the reformation of contract cause of action be abandoned." (Pls.' Opp'n Def.'s Mot. Dismiss Pls.' 2nd Am. Compl., Dec. 5, 2012, ECF No. 28 at 5.) Thus, the present Order omits analysis of the sufficiency of the pleadings of that cause of action.

[2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

Defendant's Motion was filed on November 21, 2012.[3] Plaintiffs filed a timely opposition to Defendant's Motion on December 5, 2012. For the reasons set forth below, Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint is granted.

## BACKGROUND[4]

Plaintiffs state that they owned two properties located in Susanville, California, each subject to mortgage loans: the "Connecticut Property" and the "Willow Property."

The Connecticut Property[5]

In 2006, Plaintiffs refinanced their mortgage with Countrywide Lending; Defendant later acquired that loan.

In June 2009, Plaintiffs contacted Defendant about obtaining a loan modification. Plaintiffs contend that "during initial discussions," Defendant's unidentified representative told Plaintiffs they would have to stop making their monthly loan payments before they could qualify for a loan modification. Thereafter, Plaintiffs submitted a loan modification application to Defendant. In August 2009, Plaintiffs were placed into a trial payment plan for approximately six months.

///

---

[3] Defendant also filed a Request for Judicial Notice which asks the Court to take judicial notice of twenty-five facts pursuant to Federal Rule of Evidence 201. (Req. Jud. Notice in Supp. Mot. Dismiss 2nd Am. Compl., Nov. 21, 2012, ECF No. 27.) Federal Rule of Evidence 201 permits, but does not require, a court to judicially notice certain adjudicative facts. Fed. R. Evid. 201. "[F]acts subject to judicial notice may be considered on a motion to dismiss." Mullis v. U.S. Bankr. Court, 828 F.2d 1385, 1388 (9th Cir. 1987) (citing Mack v. S. Bay Beer Distrib., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 (1991)). Despite having the authority to judicially notice facts on a motion to dismiss without contravening Rule 12(b)(6), the Court declines to exercise such discretion at this time, in part because judicially noticing the twenty-five facts is not necessary for the Court to reach its conclusion that Plaintiffs' Second Amended Complaint fails to state a claim upon which relief can be granted.

[4] The factual assertions in this section are based on the allegations in Plaintiffs' Second Amended Complaint unless otherwise specified. (See Pls.' 2nd Am. Compl., Nov. 6, 2012, ECF No. 25.)

[5] The factual assertions regarding the Connecticut Property in the Second Amended Complaint are nearly identical to the allegations in the First Amended Complaint. The only difference is an additional sentence in the Second Amended Complaint: "At all relevant times herein, Plaintiffs were ready, willing, and able to tender the entire reinstatement amount." (ECF No. 25 at 8.)

Pursuant to the trial payment plan, Plaintiffs were required to make reduced payments of approximately $685 per month. Plaintiffs made every trial plan payment in full and on time.

In January 2010, Plaintiffs contacted Defendant to obtain a permanent loan modification. Plaintiffs allege that from this point onward, when they would call about the status of their loan modification application, Defendant subjected them to long hold times and transfers, and when they did speak to (unnamed) representatives of Defendant, they did not receive definitive answers. In addition, Plaintiffs contend that they had to resubmit their loan application multiple times because Defendant lost their documents. Plaintiffs also claim that Defendant denied Plaintiffs' applications on the ground that the applications were incomplete, but failed to timely notify Plaintiffs of the denials. Indeed, Plaintiffs contend they were only notified of the denials when they called to ask about the status of their applications. During this time, Plaintiffs apparently did not pay their loans, and thus accrued a large amount of arrears and late fees.

On August 2, 2010, while Plaintiffs had a loan modification application pending and believed they were in a trial payment plan, Defendant sent Plaintiffs a Notice of Intent to Accelerate, demanding payment of $13,518—the full amount of arrears on the mortgage. On December 20, 2010, when Plaintiffs again believed they were in compliance with the trial payment plan, Defendant sent Plaintiffs a reinstatement calculation, with a reinstatement amount of $22,234.67. To reinstate their loan, Plaintiffs withdrew the entire amount from their emergency funds and reinstated the loan. Plaintiffs continued to contact Defendant over the next few months, and were repeatedly encouraged to reapply for a loan modification. However, Defendant later told Plaintiffs that Defendant could not modify Plaintiffs' mortgage on the Connecticut Property because that property was an investment property, and thus not eligible to receive loan modifications.

In July 2011, believing that applying for a loan modification was futile, Plaintiffs instead applied for a repayment plan to reinstate their mortgage and avoid foreclosure.

Plaintiffs allege that their application for a repayment plan was approved in October 2011, yet Defendant never sent Plaintiffs the appropriate papers to sign. Instead, Defendant sent Plaintiffs a Notice of Default. When Plaintiffs contacted Defendant about the Notice of Default, an individual named "LaPorsche" told Plaintiffs that there was no record that Plaintiffs had been approved for a repayment plan. Plaintiffs then followed LaPorsche's advice to apply for a loan modification. Plaintiffs allege that between October 2011 and November 2011, they sent their application materials to Defendant multiple times, yet Defendant claimed to have never received the materials.

At an unspecified time after that, Plaintiffs contacted Defendant, and were told by an individual named "Corrina Ramirez" that their loan modification application was complete and the loan modification was in underwriting. However, Plaintiffs subsequently received a Notice of Trustee Sale from Defendant, with a sale date of December 29, 2011, at 2:00 PM. Thereafter, Plaintiffs contend that they repeatedly called Defendant to inquire about their loan modification, ask for clarification regarding the trustee sale, and determine the reinstatement amount. Although the reinstatement amount was unknown to them, Plaintiffs maintain that they were ready, willing, and able to tender the reinstatement amount. Plaintiffs allege that "at some point" they spoke to Ms. Ramirez and she "advised Plaintiffs not to worry because she would be sure that Defendant would postpone the pending sale." (ECF No. 25 at 7.)

On December 22, 2011, Plaintiffs had not received a reinstatement amount from Defendant. Plaintiffs then "ordered from Defendant a reinstatement calculation" which Defendant failed to provide. (Id.) On December 29, 2011, Plaintiffs calculated a reinstatement figure of $24,500 on their own. Plaintiffs wired this amount to Defendant, sending $22,000 at 9:00 AM, and $2,500 at 11:00 AM. Plaintiffs then contacted Ms. Ramirez, who assured Plaintiffs that she would notify Defendant's attorneys of the wire transfer and that the Connecticut Property would not go to sale. However, at 2:00 PM on December 29, 2011, the Connecticut Property was sold.

///

Plaintiffs contend that they had substantial emergency funds, and at all times were ready, willing, and able to tender the entire (unspecified) reinstatement amount.

The Willow Property[6]

In 2006, Plaintiffs refinanced their mortgage on the Willow Property with Countrywide Lending; Defendant later acquired that loan.

In June 2008, Plaintiffs contacted Defendant in an attempt to apply for a loan modification. A period in which Defendant "delayed and disregarded" Plaintiffs' attempts to apply for a loan modification ensued. Specifically, Defendant failed to provide definitive answers to Plaintiffs' questions, placed Plaintiffs' telephone calls on hold for extended periods of time and transferred their calls between numerous lines, and often lost Plaintiffs' documents. Not only did Plaintiffs have to re-submit the same materials multiple times, but Defendant's conduct allegedly caused Plaintiffs' account to accrue a large amount of arrears and late fees.

"Sometime in the latter part of 2008," Plaintiffs were placed into the Home Saver Forbearance Program, a reduced mortgage payment plan. Under that plan, Plaintiffs were to make reduced mortgage payments for a period of six months while Defendant investigated a long-term solution for Plaintiffs. Though Plaintiffs made every payment in full and on time, Defendant did not advise Plaintiffs on how to proceed at the end of the six-month period. "Seeing no other alternative," Plaintiffs again applied for a loan modification. As with their previous application for a loan modification, Plaintiffs were allegedly subjected to "delay and hindrance tactics."

On October 25, 2010, Plaintiffs received a letter from Defendant that listed documents required for Plaintiffs' loan modification application. Plaintiffs submitted each required document on the day they received the letter from Defendant.

///

[6] As with the factual assertions regarding the Connecticut Property, there is no significant difference between the First Amended Complaint and the Second Amended Complaint in the statement of facts regarding the Willow Property.

Subsequently, Plaintiffs received another letter from Defendant that requested additional information from Plaintiffs. On December 7, 2010, Plaintiffs called Defendant and spoke with "Stacy White." Ms. White allegedly informed Plaintiffs that, although Defendant was requesting additional documents, the Willow Property would not be sold at a Trustee's Sale because Plaintiffs had been approved for a loan modification. Ms. White indicated that once Defendant received the additional requested documents, Plaintiffs would receive the final loan modification documents in the mail. Despite faxing all requested documents to Defendant on the day that they spoke with White, Plaintiffs never received the modification paperwork from Defendant.

On December 14, 2010, Plaintiffs' property was sold at a Trustee's Sale. At the time of the Trustee's Sale, Plaintiffs believed that they had received a loan modification and were unaware that the Willow Property would be sold. Plaintiffs had substantial emergency funds and were ready, willing, and able to pay the reinstatement amount to reinstate their mortgage if they had known the house would be sold.

## STANDARD

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. Id. However, "a plaintiff's obligations to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than a "statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). However, not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."

Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS[7]

### A. Violation of California Civil Code Section 2924

Plaintiffs' first cause of action alleges that Defendant violated California Civil Code section 2924 by providing Plaintiffs with defective notices of default, and by failing to allow Plaintiffs to reinstate their loan. Sections 2924-2924i of the California Civil Code govern non-judicial foreclosures. Under California law, a defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996); see also Magdaleno v. Indymac Bancorp, Inc., 853 F. Supp. 2d 983, 991 (E.D. Cal. 2011) (citing Alicea v. GE Money Bank, No. C 09-00091 SBA, 2009 WL 2136969, *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure.")).

[7] Portions of the Second Amended Complaint distinguish between the Connecticut Property and the Willow Property. However, Plaintiffs allege each of the six causes of action with respect to both properties, and the Second Amended Complaint refers to "the entire course of Defendant's conduct" and "Plaintiffs' Properties." (ECF No. 25 at 11, 13.) The Court does not distinguish between the properties in the present Order, and will refer to the Connecticut Property and the Willow Property collectively as "The Properties," unless otherwise specified.

The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Magdaleno, 853 F. Supp. 2d at 991 (quoting Williams v. Countrywide Home Loans, No. C 00-0242 SC, 1999 WL 740375, *2 (N.D. Cal. Sept. 15, 1999)). Thus, an action to set aside a foreclosure sale, unaccompanied by an offer to tender, does not state a cause of action which a court of equity recognizes. Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 117 (1981).

Throughout the Second Amended Complaint, Plaintiffs emphasize that they "were ready, willing, and able to tender the entire reinstatement amount." (See, e.g., ECF No. 25 at 8.) However, Plaintiffs were in default of their home mortgage loan and foreclosure has taken place. Plaintiffs are therefore "required to allege tender of the amount of [the lender's] secured indebtedness . . . ." Abdallah, 43 Cal. App. 4th at 1109 (emphasis added). While the Second Amended Complaint includes assertions that were not included in the First Amended Complaint, neither complaint alleges that Plaintiffs tendered, or were ready, willing, and able to tender, the amount of Defendant's secured indebtedness. Plaintiffs' readiness, willingness, and ability to tender "the entire reinstatement amount" – an amount distinguishable from and considerably less than Defendant's secured indebtedness – is simply not sufficient under California law.

Defendant's motion to dismiss Plaintiffs' claim for violations of California Civil Code section 2924 is therefore granted.

**B. Breach of Contract**

Plaintiffs' second cause of action alleges that Defendant breached the loan agreements by failing to comply with California Civil Code section 2924, and by failing to allow Plaintiffs to tender the reinstatement amount, as required by Section 19 of the Deed of Trust. Plaintiffs essentially claim that Defendant breached its contracts with Plaintiffs by foreclosing on Plaintiffs' properties.

Plaintiffs' claim for breach of contract is therefore "a cause of action implicitly integrated to the sale" to which California's tender rule applies. Montoya v. Countrywide Bank, C09-00641 JW, 2009 WL 1813973, *11 (N.D. Cal. June 25, 2009). As set forth above, Plaintiffs must "allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." Abdallah, 43 Cal. App. 4th at 1109. The Second Amended Complaint, unlike the First Amended Complaint, alleges that Plaintiffs were ready, willing, and able to tender the reinstatement amount. However, the Second Amended Complaint still fails to allege tender, or readiness, willingness, and ability to tender, Defendant's secured indebtedness. Because Plaintiffs have failed to allege tender of the required amount in the Second Amended Complaint, their claim for breach of contract cannot succeed under the tender rule.

Accordingly, Defendant's motion to dismiss Plaintiffs' breach of contract claim is granted.

**C. Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiffs' third cause of action alleges that Defendant breached the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation. Foley v. Interactive Data Corp., 7 Cal. 3d 654, 683-84 (1988). The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose. Id. at 690. "In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which frustrates the other party's rights to the benefits of the contract." Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1153 (1998).

///

Under California law, recovery for breach of the covenant "is available only in limited circumstances, generally involving a special relationship between the contracting parties." Bionghi v. Metro. Water Dist., 70 Cal. App. 4th 1358, 1370 (1999). California courts have rejected the argument that the doctrine, which traditionally extends only to unique fiduciary-like relationships, should encompass normal commercial banking transactions. Mitsui Mfrs. Bank v. Sup. Ct., 212 Cal. App. 3d 726, 729 (1989).

Plaintiffs allege that Defendant breached the covenant of good faith and fair dealing by, among other things, not allowing Plaintiffs to reinstate their loans, delaying Plaintiffs' loan application process, and by informing Plaintiffs that they could qualify for a loan modification when, in fact, they could not. (ECF No. 25 at 15.) Even accepting these allegations as true, redress is not available under the good faith doctrine. The Second Amended Complaint does not allege a "unique fiduciary relationship" between the parties such that application of the good faith doctrine is warranted, and no such relationship appears to exist. Instead, Defendant's alleged breach arises out of a normal commercial transaction, a mortgage loan, and the California courts have consistently declined to extend the doctrine to such transactions.

Defendant's motion to dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing is therefore granted.

### D. Promissory Estoppel

Plaintiffs' fourth cause of action is for promissory estoppel. Under California law, a plaintiff bringing an action for promissory estoppel must demonstrate: 1) the existence of a promise "clear and unambiguous in its terms;" 2) "reliance by the party to whom the promise is made;" 3) that any reliance was both "reasonable and foreseeable;" and 4) that the party asserting the estoppel was injured by his reliance. US Ecology, Inc. v. State, 129 Cal. App. 4th 887, 901 (2005) (citing Laks v. Coast Fed. Sav. & Loan Ass'n., 60 Cal. App. 3d 885, 890 (1976)).

"The doctrine of promissory estoppel is used to provide a substitute for the consideration which ordinarily is required to create an enforceable promise." Raedeke v. Gibraltar Sav. & Loan Ass'n, 10 Cal. 3d 665, 672-73 (1974).

Plaintiffs allege that Defendant "made a clear promise" that it would not sell the Connecticut Property because Defendant had received Plaintiffs' reinstatement payment on the date of the sale. (ECF No. 25 at 19.) Plaintiffs further allege that Defendant "promised" that it would not sell the Willow Property because Plaintiffs had been approved for a loan modification. (Id.) Plaintiffs contend that they reasonably relied upon Defendant's representations, and thus did not inquire about or attend the Trustee's Sale although their emergency fund allegedly contained enough money to pay the reinstatement amount.

Plaintiffs' claim for promissory estoppel is "a cause of action implicitly integrated to the sale" to which California's tender rule applies. Montoya, 2009 WL 1813973, at *11. The gravamen of Plaintiffs' claim is that Defendant promised that it would not foreclose on Plaintiffs' property, and then did so. Accordingly, Plaintiffs are required to "allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." Abdallah, 43 Cal. App. 4th at 1109. Plaintiffs' allegations as to this claim are no different from the First Amended Complaint, and Plaintiffs still fail to allege tender of this amount.

Accordingly, Defendant's motion to dismiss Plaintiffs' promissory estoppel claim is granted.

///

///

///

///

///

///

///

**E. Fraud**

Plaintiffs' fifth cause of action is for fraud. Plaintiffs claim that Defendant knowingly and recklessly made false and misleading statements that Plaintiffs relied on to their detriment. In California, the required elements of fraud are "a) misrepresentation; b) knowledge of falsity; c) intent to defraud, i.e., to induce reliance; d) justifiable reliance; and e) resulting damage." In re Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (internal citation omitted). A claim for fraud must also meet the heightened pleading standard of Rule 9(b), which requires that the allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (the heightened pleading standards of Rule 9(b) require a plaintiff to plead facts as to the "who, what, when, where, and how" of the alleged fraud). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, Semegen, 780 F.2d at 735, provided the plaintiff sets forth "what is false or misleading about a statement and why it is false," in re GlenFed, Inc., Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994).

The Court notes that there are differences between the First Amended Complaint and the Second Amended Complaint with respect to Plaintiffs' fraud claim. Nonetheless, the Second Amended Complaint fails to state a claim upon which relief can be granted. Plaintiffs have not met the heightened pleading standard of Rule 9(b), particularly with regard to Plaintiffs' December 2010 and December 2011 conversations with Defendant. (See ECF No. 25 at 20-21.) Plaintiffs fail to allege the "who, what, when, where, and how" of these critical conversations, among other details. Kearns, 567 F.3d at 1124. Plaintiffs' Second Amended Complaint also fails to specifically allege what was false or misleading about any of Defendant's statements, and why those statements were false, therefore falling short of the Rule 9(b) pleading standard.

Moreover, Plaintiffs fail to allege any facts demonstrating the reasonableness of their reliance on Defendant's alleged oral representations that Plaintiffs should stop paying their loans, would suffer no negative consequences for ceasing to pay their loans, and that their applications would be approved. See Young, 160 Cal. App. 4th at 79. Thus, even if Plaintiffs were to meet the heightened pleading requirements of Rule 9(b), they nonetheless fail to plead facts sufficient to establish a cause of action for fraud. See id.

Defendant's motion to dismiss Plaintiffs' claim for fraud is therefore granted.

**F. Violation of California Business & Professions Code Section 17200**

Plaintiffs' sixth cause of action asserts that Defendant violated California's Unfair Competition Law ("UCL"). The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code §§ 17200-17210. This section establishes a private right of action to remedy such unfair competition. See Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1082 (9th Cir. 2007).

Section 17200 establishes three separate varieties of unfair competition: acts or practices which are unlawful, or unfair, or fraudulent. Cal-Tech Commc'ns., Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999). In proscribing "unlawful business practices, section 17200 'borrows' violations of other laws and treats them as unlawful practices that [section 17200] makes independently actionable." Durrell v. Sharp Healthcare, 108 Cal. App. 4th 1350, 1361 (2010). Thus, "unlawful" practices are practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulation, or court-made." Saunders v. Sup. Ct., 27 Cal. App.4th 832, 838-39 (1994) (citing People v. McKale, 25 Cal.3d 626, 632 (1979)). To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. McKale, 25 Cal.3d at 635.

///

A business act or practice is "unfair" when the conduct “offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.” S. Bay Chevrolet v. Gen. Motors Acceptance Corp., 72 Cal. App. 4th 861, 886-87 (1999). To sufficiently plead an action based on an "unfair" business act or practice, a plaintiff must allege facts showing the "unfair" nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have. Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980). Such a claim requires a plaintiff to tether its allegation to a constitutional or statutory provision or regulation carrying out such a statutory policy. See Ferrington v. McAfee, Inc., No. 10-cv-01455-LHK, 2010 WL 3910169, at *11-13 (N.D. Cal. Oct. 5, 2010) (citing Lozano v. AT&T Wireless Servs., 504 F.3d 718 (9th Cir. 2007) (discussing the use of the tethering test in California courts and the Ninth Circuit)). Furthermore, a plaintiff alleging unfair business practices under section 17200 “must state with reasonable particularity the facts supporting the statutory elements of the violation.” Khoury v. Maly’s of Cal., Inc., 14 Cal. App. 4th 612, 619 (1993).

A claim for fraudulent business acts under section 17200 is distinct from a common law fraud claim. Under section 17200, a plaintiff need not show reliance in order to state a claim for fraudulent business acts. Klein v. Earth Elements, 59 Cal. App. 4th 965, 970 (1997). A plaintiff need only allege that the public is likely to be deceived by the alleged business acts. Id. However, all claims alleging fraudulent business practices under section 17200 are subject to the heightened pleading standard of Rule 9(b). See supra.

In this case, Plaintiffs allege that Defendant engaged in business practices that were unfair, unlawful and/or fraudulent. Specifically, Plaintiffs argue that Defendant’s breach of the covenant of good faith and fair dealing, violations of California Civil Code section 2924, inducement of reliance under the doctrine of promissory estoppel, breach of contract, and fraudulent conduct constitute unfair competition under the UCL.

///

However, Plaintiffs' pleadings are insufficient to establish a cause of action for any of the three varieties of unfair competition. First, Plaintiffs fail to plead facts sufficient to establish that Defendant has violated any law and thus engaged in unlawful business acts. Although Plaintiffs allege that Defendant violated California Civil Code section 2924 and the covenant of good faith and fair dealing, induced reliance under the doctrine of promissory estoppel, acted in breach of contract, and engaged in fraudulent conduct, each of these claims fail to survive Defendant's motion to dismiss. See supra. Accordingly, Plaintiffs' claim for unlawful business practices must also fail. Second, Plaintiffs have failed to plead facts sufficient to establish a right to relief based on "unfair" business practices. Although Plaintiffs claim that Defendant has violated several laws or statutory provisions that could carry out a public policy (ECF No. 25 at 23), Plaintiffs' claims as to those violations fail. See supra. Plaintiffs' claim for unfair business practices therefore must also fail. Finally, Plaintiffs have not met the heightened pleading requirements of Rule 9(b), and thus fail to state a claim for fraudulent business practices. See supra.

Accordingly, Plaintiffs have failed to state a claim showing that Defendant's business practices were unlawful, unfair, or fraudulent under the UCL. Defendant's motion to dismiss Plaintiffs' UCL claim is therefore granted.

## CONCLUSION

In light of Plaintiffs' failure to materially revise their pleadings in the Second Amended Complaint in accordance with this Court's previous Memorandum and Order (ECF No. 24), the Court finds that further amendment of the complaint would "constitute an exercise in futility," as it is clear that Plaintiffs' "complaint could not be saved by any amendment." Intri-Plex Techs., 499 F.3d at 1056 (citing In re Daou Sys., Inc., 411 F.3d at 1013; Ascon Props., Inc., 866 F.2d at 1160). As a matter of law, and for the reasons set forth above, it is hereby ordered that:

1. Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 26) is GRANTED WITHOUT LEAVE TO AMEND.

2. The Court sua sponte DISMISSES WITHOUT LEAVE TO AMEND Plaintiffs' claims against all Doe Defendants for failure to state a claim.

3. The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

DATED: January 29, 2013

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT JUDGE